IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-909

Filed: 6 October 2020

From the North Carolina Industrial Commission, I.C. Nos. 14-023091, 17-019920

DORIS G. CUNNINGHAM, Employee-Plaintiff,

v.

THE GOODYEAR TIRE & RUBBER CO., Employer, LIBERTY MUTUAL INSURANCE CO., Carrier, Defendants.

Appeal by Plaintiff from opinion and award entered 30 July 2019 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 August 2020.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner and David P. Stewart, and Jay A. Gervasi, Jr., for Plaintiff.*

*Young, Moore, and Henderson, P.A., by Angela Farag Craddock, for Defendants.*

BROOK, Judge.

Doris G. Cunningham ("Plaintiff") appeals from the opinion and award of the North Carolina Industrial Commission ("the Commission") denying her claim for disability compensation from Goodyear Tire and Rubber Company ("Defendant-Employer") and Liberty Mutual Insurance Company ("Defendant-Carrier") (collectively, "Defendants"). On appeal, Plaintiff primarily argues that the Full Commission erred by dismissing her 27 May 2014 claim for lack of jurisdiction and failing to decide whether she suffered a compensable injury on that date.

After careful review, we reverse the opinion and award and remand to the Commission to decide the merits of Plaintiff's 27 May 2014 claim.

## I. Factual and Procedural History

### A. Factual Background

Plaintiff has worked as a press operator for Defendant-Employer continuously since 2001 where she walks an average of eight to nine miles a day and lifts "anywhere from a thousand to fourteen hundred tires" in a 12-hour shift. After she puts the tires into a loading truck, a machine picks up the tires from the pan where they are molded and pressed and then returned on a conveyer belt. In 2011, Plaintiff injured her lower back twice while lifting tires and filed claims with the Commission; both claims were settled in 2012.

On 27 May 2014, Plaintiff tried to grab a "severely stuck" tire off a flatbed truck and hurt her lower back in the process. She reported the incident to her area manager, and when she woke up the next morning, she could not move. Plaintiff filed a F159 "Associate Report of Incident" ("F159"), an internal document that is submitted with Defendant-Employer following an incident at work, and was placed on light duty for six weeks. Plaintiff returned to full duty at the end of that six weeks and did not miss any work due to the incident. At the hearing, Plaintiff testified that

since the 2014 injury,[1] her pain has "never [been] better than a four" on a scale of one to ten.

After receiving Plaintiff's F159 for her 27 May 2014 alleged injury, Defendant-Carrier mailed Plaintiff a completed Form 19, Employer's Report of Employee's Injury, and a blank Form 18, Notice of Accident to Employer and Claim of Employee, per Defendants' accident-report protocol. Plaintiff testified that she never received these forms from Defendants and that she believed her claim for an injury to her back on 27 May 2014 had been accepted because she had been placed on light duty—something which had not happened with either of her 2011 incidents. She also testified that she was prepared to fill out the Form 18 in 2014 but was told by her union representative that "they" had already received her form.

Nancy Talavera, a claims processor for Defendant-Carrier, testified that the representative assigned to investigate Plaintiff's allegations attempted to contact Plaintiff three times to determine whether she wished to pursue a claim. According to Ms. Talavera, Defendant-Carrier's policy when it is unable to contact an employee and the employee has not lost time due to the incident is to presume that the employee does not wish to file a claim and close the file. Since Plaintiff never missed

---

[1] We refer to the 27 May 2014 claim as "the 27 May 2014 injury" or "27 May 2014 accident" or in a similar fashion. This is for ease of reading and is not an expression of our opinion as to whether Plaintiff has proven she suffered a compensable injury by accident on 27 May 2014.

work for her injury, did not file a Form 18, and did not respond to Defendant-Carrier's attempts to reach her, Defendant-Carrier closed her file.

Following the 27 May 2014 injury, Plaintiff received treatment at the dispensary, an on-site medical facility that treats work-related and non-work-related injuries and ailments of Defendant-Employer's employees. Frank Anthony Murray, a physical therapist who evaluates and treats musculoskeletal injuries at the dispensary, treated Plaintiff following the 2014 incident. When Plaintiff saw Mr. Murray on 3 June 2014, she reported her pain at ten out of ten. By 9 June 2014, her pain was "five out of ten at worse [sic], to two out of ten at best." Mr. Murray testified that Plaintiff's range of motion increased between visits and that combined with her reduction in pain level indicated that she was improving. Mr. Murray treated Plaintiff on 10, 13, 18, 23, and 24 June 2014, and by the 24 June visit, her "[r]ange of motion was full and painless[.]"

On 23 February 2015, Plaintiff returned to Mr. Murray and told him that her back pain had never completely subsided since 27 May 2014 and that she felt it had increased recently, noting her pain as "eight out of ten down to four out of ten[.]" Mr. Murray diagnosed Plaintiff with chronic low back pain, and saw Plaintiff on 3 March 2015, where she reported her pain between "three out of ten to five out of ten[.]" Plaintiff did not return to Mr. Murray until 25 April 2017. She told him that she continued to have some back pain and had been treated for plantar fasciitis since

March 2016, and her doctor suggested that the pain she was having in her feet was coming from her lower back. Plaintiff told Mr. Murray that "there was no precipitating episode[,]" but rather an "ongoing, continuation of low-back pain."

Plaintiff visited nurse case manager Kelly Avants at the dispensary on 28 April 2017, and Ms. Avants informed Plaintiff that Defendant-Carrier had closed Plaintiff's file because "she reached the statute of limitations in regard to her back claims" and they could not cover any further treatment. On 8 May 2017, Plaintiff reported that she had again been injured on 25 April 2017 from a stuck tire and that she felt a sharp pain in her lower back.

Dr. David Jones, a neurosurgeon, examined and treated Plaintiff in July 2017 and found that she had some disc desiccation in her spine at L4-5 and L5-S1, that she had a small, far lateral disc bulge that could irritate her L4 nerve root, and a more focal right-sided disc protrusion that he thought could irritate her right S1 nerve root. He determined that she did not require surgery and recommended medical management, activity modification, physical therapy, and injection therapy.

Dr. Nailesh Dave, whose main practice is neurology and chronic, musculoskeletal, and neuropathic pain, began treating Plaintiff on 19 July 2017 after she was referred by Dr. Jones for pain management. Dr. Dave diagnosed Plaintiff with chronic back pain with lumbar radiculopathy and continued to see Plaintiff through 2018 for treatment. Dr. Dave testified that it was "more than likely" that a

25 April 2017 injury exacerbated Plaintiff's 27 May 2014 injury, but there was no way to determine to what extent each injury caused her current condition.

Dr. Gurvinder Deol, an orthopedic surgeon who treats lumbar spine complaints, examined Plaintiff once in March 2018. Dr. Deol testified that Plaintiff had mild degenerative disc disease at L4-5 and L5-S1, but "overall the thought was she seemed to have a MRI that probably looked a little better than people in their mid-fifties, [be]cause everybody kind of degenerates their spine over time." Based on his one-time examination of her and the review of the records, Dr. Deol testified that "it's difficult to say if there's one particular incident" from which her current pain complaints stem.

## B. Procedural History

On 19 May 2017, Plaintiff filed two Form 18s with the Commission: one alleging an incident on 27 May 2014 and the other alleging an incident on 25 April 2017. Defendant filed a Form 61 denying Plaintiff's 27 May 2014 claim on the grounds that her action was time-barred because it was not filed within two years of the date of the alleged injury and moved to dismiss.

Both matters were consolidated and heard before the Deputy Commissioner on 15 February 2018. The Deputy Commissioner entered an opinion and award on 13 December 2018, dismissing Plaintiff's 27 May 2014 claim for lack of jurisdiction and denying Plaintiff's 25 April 2017 claim. For the 27 May 2014 claim, the Deputy

Commissioner found that Plaintiff did not file a Form 18 or any other claim for compensation with the Commission until 29 May 2017. The Deputy Commissioner further found that Plaintiff last received related medical treatment from Defendants on 3 March 2015, which was paid for by Defendants in April 2015.[2] The Deputy Commissioner concluded that Plaintiff neither (1) filed her claim with the Commission within two years of the date of incident nor (2) within two years of the last payment of medical compensation as is required by N.C. Gen. Stat. § 97-24(a). On the 25 April 2017 claim, the Deputy Commissioner concluded that there was no evidence in the record to support injury by accident or specific traumatic incident.

Plaintiff appealed to the Full Commission, and in her Form 44 assigning specific grounds for review, argued that she last received related medical treatment for her 27 May 2014 injury on 25 April 2017 and thus filed her claim within two years of the last payment of medical compensation. The Full Commission entered an opinion and award on 30 July 2019, dismissing Plaintiff's 27 May 2014 claim for lack of jurisdiction and denying Plaintiff's 25 April 2017 claim.[3]

---

[2] Defendant-Employer receives monthly invoices from the dispensary and pays for expenses incurred the month prior to the invoice date.

[3] Issues related to an alleged 25 April 2017 injury are not before us on review. Indeed, Plaintiff argues that the Full Commission improperly considered whether she suffered a compensable injury on 25 April 2017, arguing she had abandoned the issue by not raising it in her brief. Nowhere do the Commission's rules governing appeals state that issues not raised in briefs are treated as abandoned on appeal to the Full Commission. *Compare* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."), *with* 11 NCAC 23A.0701(f) (2019) (explaining brief requirements and failing to include a like provision). And in her Form 44 application for review to the Full Commission, Plaintiff alleged that "20. Finding of Fact Nos. 33, 34, 34 [sic], 35, 36 . . . improperly

Plaintiff timely noticed appeal.

## II. Motion to Strike and Motion to Amend the Record on Appeal

Before we reach the merits of Plaintiff's appeal, we first address Defendants' motion to strike supplements to the printed record on appeal and Plaintiff's motion to amend the record on appeal.

On 18 October 2019, Plaintiff filed under seal two supplements to the record on appeal: a Rule 18(d)(3) supplement which contained the transcripts of the hearing before the Deputy Commissioner, depositions and accompanying exhibits, and a Rule 11(c) supplement which contained the briefs that were filed by the parties before the Full Commission. Neither record supplement included a certificate of service. On 19 June 2020, Defendants moved to strike these supplements, arguing that they had not been properly served with these documents pursuant to Rule 26(b) of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 26(b) ("Copies of all papers filed by any party and not required by these rules to be served by the clerk shall, at or before the time of filing, be served on all other parties to the appeal."). Defendants further moved that this Court strike all citations to the record supplement in

finds as fact that there was 'no evidence in the record to support' a 25 April 2017[ ] injury by accident or specific traumatic accident." This issue was thus properly before the Full Commission, *see Hurley v. Wal-Mart Stores, Inc.*, 219 N.C. App. 607, 611, 723 S.E.2d 794, 796 (2012) (holding the Full Commission does not have authority to address issues other than those raised in Form 44), even though it is not before us on appeal.

Plaintiff's brief, impose any sanctions we deem proper, and grant Defendants any relief deemed just and proper.

In response to Defendants' motion, Plaintiff filed a motion to amend the record on 1 July 2020, which included a certificate of service dated 1 July 2020 for the hearing and deposition transcripts, a certificate of service dated 1 July 2020 for the Rule 11(c) supplement, and other documents required by Rule 11(c), which governs when one party disagrees with the inclusion of a certain document on appeal. Defendants objected to including the briefs to the Full Commission in the record on appeal. *See* N.C. R. App. P. 11(c) (requiring an index and statement that the items to which the other party objects be filed separately along with the supplement).

When a party fails to comply with a non-jurisdictional rule, we must "determin[e] whether a party's noncompliance . . . rises to the level of a substantial failure or gross violation[.]" *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 366 (2008). "[T]he court may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review and whether and to what extent review on the merits would frustrate the adversarial process." *Id.*, 357 S.E.2d at 366-67; *see also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam) (discouraging review on the merits when doing so would leave the appellee "without notice of the basis upon which [the] appellate court might rule").

The service requirements of Rule 26(b) are not jurisdictional, *Henlajon, Inc. v. Branch Hwys., Inc.*, 149 N.C. App. 329, 333, 560 S.E.2d 598, 601-02 (2002), and, pursuant to *Dogwood*, we conclude that Plaintiff's noncompliance does not rise to the level of a substantial failure or gross violation. First, Plaintiff's failure does not impair our review on the merits. Nor would review on the merits leave Defendants "without notice of the basis upon which [we] might rule" given that Defendants cite both the hearing testimony and deposition transcripts throughout their brief, demonstrating they have had access to these documents. *Viar*, 359 N.C. at 402, 610 S.E.2d at 361. And presumably Defendants have long had access to the parties' briefs filed with the Full Commission. We therefore deny Defendants' motion to strike and grant Plaintiff's motion to amend the record on appeal.

## III. Analysis

On appeal, Plaintiff argues that the Full Commission erred by finding as fact that she last received related medical treatment for her 27 May 2014 claim on 3 March 2015 and therefore erred in concluding that she failed to file her claim within two years of the last payment of medical compensation. Relatedly, Plaintiff argues that the Full Commission erred by failing to make any findings of fact or conclusions of law as to whether she sustained a compensable back injury on 27 May 2014.

Both of Plaintiff's arguments can be resolved by determining the primary issue raised by this appeal: whether Plaintiff properly invoked the jurisdiction of the

Commission over her 27 May 2014 injury. After careful review, we conclude that she did.

## A. Standard of Review

Whether a party timely filed a claim with the Commission is a question of jurisdiction, and

> [t]he finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record. . . . This Court makes determinations concerning jurisdictional facts based on the greater weight of the evidence.

*Capps v. Southeastern Cable*, 214 N.C. App. 225, 226-27, 715 S.E.2d 227, 229 (2011) (internal marks and citations omitted). In making jurisdictional findings of fact, this Court must "assess the credibility of the witnesses" and weigh the evidence "using the same tests as would be employed by any fact-finder in a judicial or quasi-judicial proceeding." *Morales-Rodriguez v. Carolina Quality Exteriors, Inc.*, 205 N.C. App. 712, 715, 698 S.E.2d 91, 94 (2010).

## B. Merits

"[T]he timely filing of a claim for compensation is a condition precedent to the right to receive compensation[,] and failure to file timely is a jurisdictional bar for the Industrial Commission." *Reinhardt v. Women's Pavilion, Inc.*, 102 N.C. App. 83, 86, 401 S.E.2d 138, 140 (1991). Pursuant to N.C. Gen. Stat. § 97-24(a) (2019), a claim is

> forever barred unless (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article within two years after the accident or (ii) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article.

"Under section 97-24(a)(ii), a plaintiff must show that: (1) his claim was filed within two years after the last payment of 'medical compensation,' (2) no 'other compensation' was paid, and (3) the employer's liability has not otherwise been established under the Act." *Clark v. Summit Contractors Group, Inc.*, 238 N.C. App. 232, 235, 767 S.E.2d 896, 898 (2014). "Dismissal of a claim is proper where there is an absence of evidence that the Industrial Commission acquired jurisdiction by the timely filing of a claim or by the submission of a voluntary settlement agreement to the Commission." *Reinhardt*, 102 N.C. App. at 86-87, 401 S.E.2d at 140-41.

Although Plaintiff alleged an accident occurred on 27 May 2014, Plaintiff did not file a claim for compensation until 19 May 2017, more than two years after the accident. However, Plaintiff argues her claim was timely filed because she filed it within two years of the last payment of medical compensation, which she argues was on 25 April 2017. Defendants argue that the Full Commission correctly determined

that the last payment of medical compensation for Plaintiff's 27 May 2014 injury was in April 2015 and therefore Plaintiff's claim is time-barred.[4]

Though not explicitly stated, implicit in N.C. Gen. Stat. § 97-24(a)(ii) is that the medical compensation must be related to the alleged work-related injury. *See* N.C. Gen. Stat. § 97-2(19) (2019) ("The term 'medical compensation' means medical, surgical, hospital, nursing, and rehabilitative services . . . as may reasonably be required to give effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability[.]"). We also note the general principle that "the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees, and [ ] this overarching purpose is not to be defeated by the overly rigorous technical, narrow and strict interpretation of its provisions." *Gore v. Myrtle/Mueller*, 362 N.C. 27, 36, 653 S.E.2d 400, 406 (2007) (internal marks and citation omitted).

---

[4] There is no dispute here that "(2) no 'other compensation' was paid[ ] and (3) the employer's liability has not otherwise been established under the Act." *Clark*, 238 N.C. App. at 235-38, 767 S.E.2d at 898-900 (explaining "other compensation" means the money allowance "made payable to the plaintiff pursuant to the Worker's Compensation Act") (internal marks and citation omitted). Our inquiry is singularly focused on when the last payment of medical compensation was made.

Furthermore, Defendants acknowledge that Plaintiff's 3 March 2015 medical treatment at the dispensary qualified as medical compensation for purposes of N.C. Gen. Stat. § 97-24(a)(ii). And they concede that they paid for her 25 April 2017 medical treatment at the dispensary, which is primarily used by employees for workplace injuries. Given this concession, and as discussed below in greater detail, Defendants are left to argue that the 25 April 2017 dispensary visit was unrelated to the 27 May 2014 injury to prevail in their jurisdictional argument.

Consistent with these principles, this Court has held that employees whose original diagnoses develop into different conditions are not time-barred from bringing claims when their employers were providing medical treatment. *See, e.g.*, *Erickson v. Siegler*, 195 N.C. App. 513, 521-22, 672 S.E.2d 772, 778-79 (2009) (plaintiff's claim not time-barred where he was initially diagnosed with a lumbar spine injury following an accident at work and over two years later filed a claim for a cervical spine condition); *see also Wyatt v. Haldex Hydraulics*, 237 N.C. App. 599, 614, 768 S.E.2d 150, 160 (2014) ("[The plaintiff] suffers from a rare brain condition that is notoriously difficult to properly diagnose given its symptoms, and we believe it would defeat the purpose of the Act to deny him benefits because he was unable to fully diagnose his condition himself within the two-year statute of limitations period.").

Relatedly, this Court has liberally interpreted "last payment of medical compensation" when dealing with a similar provision in N.C. Gen. Stat. § 97-25.1, which states:

> The right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to the expiration of this period, . . . the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission[.]

N.C. Gen. Stat. § 97.25.1 (2019). In *Miller v. Carolinas Med. Ctr.-Northeast*, the plaintiff-employee and defendant-carrier/employer disagreed as to when the last payment of medical compensation was made where the employer paid "an

- 14 -

administrative intermediary" to schedule an appointment for the employee after she experienced a flare-up of back pain related to her previous compensable injury. 233 N.C. App. 342, 352, 756 S.E.2d 54, 61 (2014) (almost two-year gap between original injury and increased pain). Recognizing that "while every expense paid might not be considered 'medical compensation[,]'" we held that the service provided "was necessary to ensure that [the p]laintiff received the treatment determined to be appropriate by the Commission in order to 'effect a cure or give relief for' [the p]laintiff's compensable back injury." *Id.*

Here, the Full Commission concluded that Plaintiff's 2014 claim was jurisdictionally barred because Defendant-Employer "did not pay for medical treatment beyond April 2015[,]" and Plaintiff did not file a claim within two years of April 2015. Despite the substantial overlap between Plaintiff's 2014–15 and 2017 medical treatment, discussed in greater detail below, the Full Commission did not make findings or cite evidence in support of its assertion that Defendant's payment for medical treatment stopped in April 2015. Perhaps this finding and conclusion were based on a "discontinuation note" placed in Plaintiff's dispensary file by Mr. Murray. He testified that, following her May 2014 injury, she came in for treatment in June 2014 and then again in February and March 2015. When Plaintiff did not return after the March 2015 visit, Mr. Murray put a "discontinuation note" in Plaintiff's file, which he does when "people don't come back [for treatment]."

As noted above, we are not bound by the Full Commission's jurisdictional findings of fact and indeed are tasked with making our own "independent findings . . . from [our] consideration of all the evidence in the record." *Capps*, 214 N.C. App. at 227, 715 S.E.2d at 229 (citation omitted). Based on that review and "the greater weight of the evidence[,]" we find that the 25 April 2017 visit was related to Plaintiff's May 2014 injury. *Id.*

Mr. Murray testified that Plaintiff returned to him in April 2017 for treatment because "[s]he continued to have some back pain" and "she had also been treated for plantar fasciitis for about a year and a half prior . . . and at some point . . . towards the end of that treatment, the doctor . . . felt that maybe the pain she was having in her feet was coming from her back[.]" He further testified that it was his understanding that her back pain "had [ ] never gone away, and it had been gradually worsening over the previous . . . period of time, a few weeks where it had become painful as she was lifting tires[.]" In his note from that visit, Mr. Murray wrote, "[P]laintiff is familiar with me for treatment of a previous episode of back pain about 2 years ago. *She reports that her symptoms never completely went away*." (Emphasis added.) Dr. Dave testified that when he first saw Plaintiff on 19 July 2017 for pain management treatment, "*her current presentation was chronic pain involving the lower back for about three and a half years*[.]" (Emphasis added.) And when Plaintiff

went to Dr. Jones on 18 July 2017, she reported chronic back pain with an onset date of 19 June 2014.

Based on all the evidence in the record, Plaintiff's return visit to Mr. Murray on 25 April 2017—which he related back to his 2014–15 treatment of Plaintiff and was paid for by Defendant-Employer—was related to her alleged 27 May 2014 injury. Our holding is consistent with the general principle that the Worker's Compensation Act requires liberal construction, as it would be overly rigid and technical to hold that a lapse in continuous care meant that subsequent treatment was unrelated to the original injury. This is especially so where, as here, Plaintiff received treatment for her feet with another doctor who opined that her symptoms were related to her low back, and she clearly complained of pain that had "never gone away" since 2014. *See Erickson*, 195 N.C. App. at 521, 672 S.E.2d at 778 ("Under [the] defendants' approach, an employee would be precluded from receiving compensation for not properly diagnosing h[er] own injury and informing the defendant of that diagnosis."). This Court moreover has previously recognized that a flare-up of an old back injury can not only occur but also require subsequent treatment—even where there has been a lapse in continuous care. *See, e.g.*, *Miller*, 233 N.C. App. at 343, 756 S.E.2d at 55-56. Finally, to the extent that the Full Commission concluded it lacked jurisdiction based on one physical therapist's "discontinuation note"—which conflicts with the same physical therapist's testimony connecting his 2014–15 and 2017 treatment of

Plaintiff—that is the sort of "technical, narrow[,] and strict interpretation" of workers' compensation provisions our case law warns against. *Gore*, 362 N.C. at 36, 653 S.E.2d at 406.

We therefore reverse the opinion and award of the Full Commission dismissing Plaintiff's 27 May 2014 claim as jurisdictionally barred.[5]

IV. Conclusion

For the above stated reasons, we hold that the Commission had jurisdiction over Plaintiff's 27 May 2014 claim because she filed within two years of the last payment of medical compensation per N.C. Gen. Stat. § 97-24(a)(ii). We reverse the opinion and award of the Full Commission and remand for a determination into the merits of Plaintiff's claim.

REVERSED AND REMANDED.

Judge HAMPSON concurs.

Judge TYSON dissents by separate opinion.

---

[5] Though we hold Plaintiff's claim is not jurisdictionally barred, we express no opinion as to whether Plaintiff can or will succeed on the merits of her claim before the Commission, where she still bears the burden of proving she suffered a compensable injury by accident on 27 May 2014. *See Snead v. Sandhurst Mills, Inc.*, 8 N.C. App. 447, 451, 174 S.E.2d 699, 702 (1970) ("A person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from [an] accident."); *Whitfield v. Lab. Corp.*, 158 N.C. App. 341, 350, 581 S.E.2d 778, 785 (2003) ("To establish the necessary causal relationship for the injury to be compensable under the Act, the evidence must be such as to take the case out of the realm of conjecture and remote possibility.") (citations omitted). And if she suffered a compensable injury, the Commission must still determine whether she is entitled to compensation or benefits.

No. COA 19-909 – *Cunningham v. Goodyear Tire & Rubber Co.*

TYSON, Judge, dissenting.

The majority's opinion ignores the standard of appellate review, reweighs the evidence to substitute its preferred, but wholly unsupported, outcome, and reverses the Commission's opinion and award without any lawful basis. I respectfully dissent.

## I. Background

Pursuant to the North Carolina Rules of Appellate Procedure, a record on appeal is settled by agreement, opposing party's approval, or by operation of rule or court order after appellee's objection or amendment. N.C. R. App. P. 18(d). Plaintiff served its proposed record on appeal upon Defendants on 27 August 2019. Defendants submitted timely objections and amendments to the proposed record on appeal on 26 September 2019. The parties settled the record on appeal with this Court on 11 October 2019, after Plaintiff agreed to incorporate Defendants' amendments into the record on appeal.

> If any appellee timely serves amendments, objections, or a proposed alternative record on appeal, the record on appeal shall consist of each item that is either among those items required by Rule 9(a) to be in the record on appeal or that is requested by any party to the appeal and agreed upon for inclusion by all other parties to the appeal.

N.C. R. App. P. 11(c). The record shows Defendants properly and timely objected to several proposed additions to the record. Plaintiff asserts the parties spoke and determined to include some portions of material to which Defendants had objected. Defendants responded saying they understood Plaintiff intended to file a supplement

to the printed record on appeal containing the parties' briefs to the Full Commission. Defendants were never served nor did they receive copies of Plaintiff's proposed supplements as required by the appellate rules and by precedent in N.C. R. App. P. 26(b).

"Copies of all papers filed by any party and not required by these rules to be served by the clerk *shall*, at or before the time of filing, *be served* on all other parties to the appeal." N.C. R. App. P. 26(b) (emphasis supplied). This Court's docket sheet contains entries, which show Plaintiff's "supplements" were received by the Court on 18 October 2019. Defendants claim, as of 19 June 2020, they had not been served copies of the supplements.

> Papers presented for filing *shall contain* an acknowledgment of service by the person served or proof of service in the form of a statement of the date and manner of service and of the names of the persons served, certified by the person who made service. Proof of service *shall appear* on or be affixed to the papers filed. (emphasis supplied).

N.C. R. App. P. 26(d). "Appellant bears burden of seeing that record on appeal is properly settled and filed with appellate court." *McLeod v. Faust*, 92 N.C. App. 370, 374 S.E.2d 417 (1988).

On 11 October 2019, the parties' agreed upon and settled record on appeal was filed with this Court. On 18 October 2019, Plaintiff submitted her supplemental documents. Defendants assert they are unable to access the electronic links Plaintiff

provided. Defendants received an email with instructions to view the 11 October 2019 record on appeal. Defendants received two emails with instructions to view the 18 October supplemental records. The supplemental records do not appear in the North Carolina Appellate Courts eFiling Site, and there are no 18 October 2019 entries.

N.C. R. App. P. 18(d)(3) instructs Defendants to seek an administrative tribunal within ten-days for failure of a party to file or serve properly. Plaintiff failed to comply with the mandatory procedure for amending the record on appeal and to give notice of the supplemental record to Defendants. N.C. R. App. P. 26(d). Defendants cannot timely respond if not properly notified.

Defendants' motion to strike is properly granted and the supplemental record stricken for Plaintiff's failure to follow the rules and procedures.

## II. Standard of Review

This Court's proper standard of review of the Industrial Commission's order and award is long established. See N.C. Gen. Stat. §§ 97-18(j), 97-86 (2019). "When considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. Columbus Cty. Bd. of Educ.*, 171 N.C. App. 725, 727-28, 615 S.E.2d 69, 72 (2005) (citations and internal quotations omitted); see *also Holt v. N.C.*

*DOT*, 245 N.C. App. 167, 174-175, 781 S.E.2d 697, 703 (2016). "The North Carolina Industrial Commission's . . . conclusions of law must be justified by its findings of fact and its findings of fact must be supported by competent evidence." *See Lauziere v. Stanley Martin Communities, LLC,* ___ N.C. App. ___, 844 S.E.2d 9, 11 (2020). (lack of competent evidence in the finding of facts showed plaintiff was unable to carry her burden).

## A. Competent Evidence

> The right to compensation under this Article *shall be forever barred* unless (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article *within two years* after the accident or (ii) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission *within two years* after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article. (emphasis supplied).

N.C. Gen. Stat. § 97-24 (2019). The Full Commission ("Commission") is divested of jurisdiction if Plaintiff fails to establish and prove a claim under either prong (i) or (ii) of § 97-24.

The record contains competent evidence to show Plaintiff failed to meet the jurisdictional timelines of either prong in N.C. Gen. Stat. § 97-24. The Commission properly dismissed Plaintiff's 27 May 2014 claim for lack of jurisdiction.

*1. N.C. Gen. Stat. § 97-24 (i)*

"The right to compensation . . . shall be forever barred unless . . . (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article *within two years* after the accident." N.C. Gen. Stat. § 97-24(a)(i) (emphasis supplied).

Plaintiff experienced a prior work injury in 2011 and was familiar with the procedure to report an accident. Plaintiff was allegedly injured at work on 27 May 2014 and began receiving treatment. N.C. Gen. Stat. § 97-24(a)(i) and the Commission's rules and procedures require Plaintiff to file Forms 18 and 19 to report a work accident within two years.

Plaintiff failed to file the forms for the 27 May 2014 injury until 19 May 2017. Three years lapsed from the alleged accident causing injury until Plaintiff's filing of the required forms despite multiple attempts by the insurance carrier to contact her. The record shows competent evidence that Plaintiff failed to file a claim and failed to satisfy prong (i).

*2. N.C. Gen. Stat. § 97-24 (ii)*

"The right to compensation . . . shall be forever barred unless . . . (ii) a claim or memorandum of agreement . . . is filed with the Commission *within two years after* the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article." N.C. Gen. Stat. § 97-24(a)(ii) (emphasis supplied). The Commission resolved

a factual issue by finding the last payment of medical compensation was paid April 2015.

Competent evidence in the record shows Plaintiff's final medical treatment regarding the 27 May 2014 injury occurred on 3 March 2015, and the final payment of medical compensation for that 2014 injury was made April 2015. Plaintiff did not return to seek any further medical treatment from Defendant-Employer's dispensary until 25 April 2017 when Plaintiff complained to the physical therapist ("Mr. Murray") of continuing chronic back pain and plantar fasciitis.

Plaintiff told Mr. Murray that there was no precipitating event to her current back pain. Defendant-Employer's registered nurse ("Ms. Avant"), asked Plaintiff what had caused her pain at that time. Plaintiff gave conflicting information and related her pain back to her 2011 injuries "on the 1300 row." Plaintiff' asserts the 25 April 2017 appointment should be considered as the most recent medical treatment for her 27 May 2014 injury. This factual issue was resolved by the Commission.

On 28 April 2017, Plaintiff attempted to seek treatment for the alleged 2011 or 2014 injuries. Ms. Avant notified Plaintiff due to expiration of the two-year statute of limitations she would have to pay for treatment under her own insurance. While a conflict in testimony may exist, the Commission gave more weight to Mr. Murray's and Ms. Avant's credibility and testimonies than to Plaintiff.

This Court has held, "when the matter is appealed to the [F]ull Commission

. . . it is the duty and responsibility of the [F]ull Commission to decide all of the matters in controversy between the parties." *Abernathy v. Sandoz Chems./Clariant Corp.*, 151 N.C. App. 252, 256, 565 S.E.2d 218, 221 (2002) (citations and internal quotations omitted).

The last payment was made in April 2015. Plaintiff did not seek *any* further medical treatment for her alleged 27 May 2014 injury until April 2017. The Commissioner found "as fact that Plaintiff did not file a claim or memorandum of agreement as provided in N.C. Gen. Stat. § 97-82 with the Commission within two (2) years after the last payment of medical compensation."

Plaintiff bears the burden of proving each and every element of compensability. She failed to show she received ongoing medical treatment for her alleged 27 May 2014 back injury and timely filed her claim within the two-year jurisdictional limit. The Commission's finding of fact is supported by competent evidence that more than two years had passed since the last medical payment was made. Plaintiff fails to assert a claim under prong (ii) of N.C. Gen. Stat. § 97-24(a).

B. Facts Justify Conclusion

The Commission found Defendants presented competent evidence to show Plaintiff failed to timely appeal a claim under either (i) and (ii) of N.C. Gen. Stat. § 97-24(a). Our standard of review of the Commission's opinion and award requires the finding of facts to support and justify the conclusion of law. *Simmons v. Columbus*

*Cty. Bd. Of Educ.*, 171 N.C. App. 725, 727-28, 615 S.E.2d 69, 72 (2005).

### C. Undisputed Facts

Competent evidence in the record and the Commission's finding of fact show Plaintiff was injured 27 May 2014 and began receiving treatment from her employer. Plaintiff failed to provide or file Forms 18 and 19 in accordance with N.C. Gen. Stat. § 97-24. Plaintiff also failed to respond to the three attempts by the carrier to reach her to investigate Plaintiff's injury. The evidence shows Plaintiff stopped receiving treatment for the May 2014 injury on 3 March 2015. Final compensation for medical treatment for Plaintiff's 2014 injury occurred in April 2015. Plaintiff did not return to Defendant-Employer's dispensary until 25 April 2017.

At that time, Plaintiff told Mr. Murray there was "no precipitating event to her current, chronic back pain." Plaintiff offered contrary testimony to Ms. Avant and claimed her back pain had persisted for the prior two years. Plaintiff told Ms. Avant her pain was related to her 2011 injury at a wholly different work area from where the 2014 injury occurred.

Dr. Gurvinder Deol, evaluated Plaintiff on 29 March 2018. Plaintiff told Dr. Deol she had hurt her back in 2011, reinjured it in 2014, and again in 2017. Dr. Deol opined Plaintiff's complaints of pain were not related to her employment and were more likely from typical wear and tear upon the body. Upon reviewing Plaintiff's MRI, Dr. Deol and Dr. Nailesh Dave noted mild findings, but nothing "horrible."

Further, Dr. Deol's review of Plaintiff's diagnostic imaging revealed minimal degenerative changes, but he noted the Plaintiff's back was objectively in better condition than the average person in their mid-fifties.

Plaintiff failed to file the appropriate form for her 27 May 2014 injury until 19 May 2017. This filing occurred nearly three years after the original injury, and 25 months after the final medical payment. The Commission's finding of facts are supported by competent evidence, and those findings justify the conclusion Plaintiff failed to abide by the statutory requirements to timely file a claim to receive further compensation for her 2014 injury.

### III. Conclusion

The majority's opinion exceeds its lawful scope of appellate review, reweighs the evidence and credibility of the testimony as finders of fact, to reverse the Commission's opinion and award. "As long as there is competent evidence in support of the Commission's decision, it does not matter that there is evidence supporting a contrary finding. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Simmons,* 171 N.C. App. at 728, 615 S.E.2d at 72 (citations omitted). Competent evidence supports the Commission's finding and conclusion to bar Plaintiff's claim.

The Commission's conclusion that Plaintiff's claim is barred under either prong of N.C. Gen. Stat. § 97-24 is supported by findings of fact, which are based upon

competent evidence. Defendants' motion to strike Plaintiff's supplemental documents is properly allowed. The Commission's opinion and award is properly affirmed. I respectfully dissent.