IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-260

 No. COA21-486

 Filed 19 April 2022

 NORTH CAROLINA INDUSTRIAL COMMISSION, I.C. No. 18-754456

 LEKIA MOYE-LYONS, Plaintiff,

 v.

 NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION AND
 SEDGWICK CMS (THIRD PARTY ADMINISTRATOR), Defendants.

 Appeal by Plaintiff from opinion and award entered 20 April 2021 by North

 Carolina Industrial Commission. Heard in the Court of Appeals 22 February 2022.

 Perry & Associates, by Cedric R. Perry, for Plaintiff-Appellant.

 Attorney General Joshua H. Stein, by Assistant Attorney General Matthew E.
 Buckner, for Defendants-Appellees.

 WOOD, Judge.

¶1 Plaintiff Lekia Moye-Lyons (“Plaintiff”) appeals an opinion and award of the

 North Carolina Industrial Commission (“the Commission”) denying Plaintiff’s claim

 against the North Carolina Department of Public Instruction (“Defendant-

 Employer”) and Sedgwick CMS (“Defendant-Carrier”) (collectively, “Defendants”)

 based on the Commission’s conclusion that Plaintiff failed to file a timely claim under

 the Workers Compensation Act and that the Commission did not acquire jurisdiction

 over Plaintiff’s claim. After careful review, we affirm the Commission’s opinion and
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 award.

 I. Factual and Procedural Background

¶2 On April 20, 2007, Plaintiff was employed by Edgecombe County Public

 Schools, a school district falling under the authority of Defendant-Employer, as a

 temporary part-time math tutor for sixth, seventh, and eighth grade students.

 During Plaintiff’s employment as a tutor, Edgecombe County Schools did not require

 Plaintiff to take any additional classes to become a licensed teacher. Previously,

 Plaintiff worked as an “emergency” teacher for Halifax County Schools and Nash-

 Rocky Mount Schools, as she did not possess a teaching license. However, Plaintiff

 greatly desired and set as a personal goal to become a licensed math teacher.

¶3 During the course of her employment with Halifax County Schools and Nash-

 Rocky Mount Schools, Plaintiff sought to be licensed as a lateral entry math teacher

 through the Nash Regional Alternative Licensing Center (“NRALC”). To obtain a

 teaching license through NRALC, Plaintiff had to meet a number of requirements.

 Although Plaintiff obtained a degree in Business Administration and Management

 from Shaw University, she was required to obtain her teaching license through

 NRALC because she did not possess a degree in Mathematics. After taking several

 courses, Plaintiff believed that she had completed the necessary requirements to

 obtain her licensure in 2004.

¶4 On November 3, 2006, Plaintiff received a letter from NRALC indicating her
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 application for licensure had multiple deficiencies and requiring her to complete

 additional steps to clear her lateral entry license. In this letter, NRALC advised

 Plaintiff’s only choice in meeting the remaining conditions was to associate with a

 college or university that had an approved program in middle grades math and have

 that school evaluate Plaintiff’s transcripts and set up a plan of study. This letter

 indicated that once Plaintiff completed the needed courses, the university she chose

 to attend would then be able to recommend Plaintiff for a clear teaching license. After

 receiving NRALC’s November 3, 2006 letter, Plaintiff did not enroll in a college or

 university to finish meeting the remaining licensure requirements. As a result of

 receiving this letter, Plaintiff testified that she was “devastated” after not being

 licensed and felt “depressed” and “overwhelmed.”

¶5 After the denial of her teaching license by NRALC, Plaintiff contends the letter

 caused her to have several alleged medical symptoms. Plaintiff alleged that while

 working for the Defendant-Employer on April 20, 2007, she suffered a stroke and

 subsequently developed Bell’s Palsy due to stress she experienced after the denial of

 her teaching license. Plaintiff also alleged she began experiencing auditory

 disturbances “a few weeks later,” that eventually lead to her diagnosis of

 schizophrenia in April 2009. Despite hearing beeping noises in the weeks following

 her alleged April 20, 2007 injuries, Plaintiff continued working for Edgecombe County

 Public Schools for an additional nine months to one year. During this time, Plaintiff
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 continued to drive herself to work and home, took care of her children, made her

 meals, and paid her bills.

¶6 Documentation of Plaintiff’s medical records indicate that Plaintiff first

 reported signs of mental health issues in 2009. During a medical appointment on

 March 17, 2009, Plaintiff described hearing voices coming from the TV, ceiling, and

 vents for several months. After being involuntarily committed to Coastal Plain

 Hospital on April 5, 2009 and readmitted on April 16, 2009, Plaintiff was diagnosed

 with psychosis, which involved a “fixed delusion of a plot against her by the school

 system and this is unfortunately likely to be a long-standing delusion which she had

 kept well under wraps.” On April 29, 2009, Dr. William Oliver Mann, a board-

 certified psychiatrist, began treating Plaintiff for schizophrenia. Between April 4,

 2009 and October 29, 2018, Plaintiff experienced issues related to her diagnosis of

 schizophrenia. During this period, Plaintiff professed to experiencing auditory

 hallucinations and delusions, and was the subject of multiple involuntary

 commitment proceedings instituted on April 4, 2009, October 21, 2012, and January

 13, 2015. Plaintiff was also placed into inpatient hospitalization due to her mental

 health on four separate occasions: from April 5-9, 2009; April 16-29, 2009; October

 21-November 2, 2012; and August 26- September 14, 2016. Plaintiff testified that

 between 2009 and 2017, she was hospitalized for a total of 250 days.

¶7 During this same period, Plaintiff applied repeatedly for Social Security
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 Disability benefits through the Social Security Administration (SSA). Plaintiff filed

 applications on May 6, 2009, July 22, 2010, September 30, 2011, and March 6, 2013.

 In support of Plaintiff’s first application, which was denied on August 14, 2009,

 Plaintiff submitted a “Function Report-Adult-Third Party” which was completed by

 her parents on July 27, 2009. The report stated that Plaintiff was living with her

 parents at the time, described her as “depressed,” unable “to make rational decisions

 to care for children, properly without help,” could not hold a job, unable to manage

 her checkbook, needed assistance taking her medication, but noted that she was

 taking a twice weekly community college course, was able to pay bills, cooked “about

 5% of the time,” and when prompted, helped with household chores.

¶8 While applying for disability benefits, Plaintiff executed several medical

 release forms to SSA and signed on her own behalf. On June 30, 2014, Plaintiff hired

 an attorney to represent her in the Social Security Disability claim and executed

 paperwork appointing him as her representative in the matter. On May 7, 2015,

 Plaintiff signed an “Advance Notification of Representative Payment,” as SSA had

 determined that Plaintiff needed assistance in managing her benefits and designated

 Plaintiff’s father as her representative payee. By signing this document, Plaintiff

 indicated that she understood she had sixty days to appeal SSA’s appointment of a

 representative payee and the identity of the representative payee. Plaintiff was

 initially approved for Social Security Disability benefits on April 22, 2015 for
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 schizophrenia, mood swings, myalgia, and neuralgia, with SSA determining that

 Plaintiff became disabled as of October 21, 2012. Plaintiff appealed the date of her

 disability to SSA’s Office of Disability Adjudication and Review and was ultimately

 approved for full benefits on May 11, 2017, with her date of disability modified to

 September 1, 2010.

¶9 On October 29, 2018, Plaintiff initiated a claim for workers’ compensation

 benefits by filing a Form 18 Notice of Accident to Employer and Claim of Employee,

 Representative, or Dependent for her alleged 2007 workplace injuries. At an April 25,

 2019 hearing before Deputy Commissioner Kevin Howell on this claim, Plaintiff,

 appearing pro se, confirmed that she had not previously filed any workers’

 compensation claim for these injuries. At this hearing, a claims adjuster for

 Defendant-Carrier confirmed that Defendant-Carrier had not authorized any

 payment of indemnity or medical compensation to Plaintiff in relation to this claim.

¶ 10 On June 14, 2019, the Deputy Commissioner issued an opinion & award

 dismissing Plaintiff’s claim with prejudice, determining that Plaintiff did not file her

 workers’ compensation claim in a timely manner. While still proceeding pro se,

 Plaintiff appealed to the Full Commission. Prior to the matter being heard before the

 Full Commission, Plaintiff retained counsel and moved the Commission to amend the

 Record and accept new evidence. On December 19, 2019, the Full Commission issued

 an order directing Plaintiff to produce to Defendants, and file with the Commission,
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 the complete set of SSA medical documentation and other records from the 2017

 hearing before the Office of Disability Adjudication and Review. Plaintiff was also

 ordered to subpoena any involuntary commitment records from the appropriate

 county clerk of court.

¶ 11 On April 20, 2021, the Full Commission issued its opinion & award, concluding

 that Plaintiff’s claim was not timely filed, was not entitled to the tolling of the two-

 year limitations period pursuant to N.C. Gen. Stat. § 97-24 because Plaintiff was not

 mentally incompetent between April 20, 2007 to April 20, 2009, and that the

 Commission did not properly acquire jurisdiction over Plaintiff’s claim. The

 Commission further concluded that even “assuming, arguendo, that Plaintiff became

 mentally incompetent” on April 4, 2009, the date of her first involuntary commitment,

 “the Full Commission concludes that she was no longer mentally incompetent by 11

 November 2009, the date when her treating psychiatrist deemed her able to return

 to work and provide instruction to children as young as twelve years old.” The

 Commission’s conclusions were based in part upon a letter Plaintiff provided from Dr.

 Mann, dated November 11, 2009, which stated:

 You have requested me to determine whether or not you
 are capable of returning to work on a part time basis. I have
 been treating [you] since 4/29/2009 for schizophrenia. This
 condition has improved significantly, and you are stable for
 the last several months. You have been compliant with
 treatment. It is my medical opinion that you are capable of
 returning to part time work at this time. Although it is
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 difficult to determine if and when you may become sick
 again, as long as you remain on medication, follow up with
 your treatment and see me every 6 weeks to monitor for
 any breakthrough symptoms, I see no reason to keep you
 from working at this time . . . It is my medical opinion that
 your condition does not prevent you from tutoring children
 as young as 12 years old.

 The Commission further held that Plaintiff did not present sufficient competent

 evidence to establish that she was mentally incompetent at any point after November

 11, 2009, so that any tolling of N.C. Gen. Stat. § 97-24 expired as of that date. The

 Commission dismissed Plaintiff’s claim with prejudice. Plaintiff filed notice of appeal

 to this Court on May 18, 2021.

 II. Appellate Jurisdiction

¶ 12 The ruling of the Full Commission dismissing Plaintiff’s claim with prejudice

 is a final decision and appeal lies to this Court pursuant to N.C. Gen. Stat. § 7A-29.

 III. Discussion

¶ 13 On appeal, Plaintiff contends that despite not filing a workers compensation

 claim within two years of April 20, 2007, the Commission erred in its finding of her

 claim being time barred and dismissing her claim for want of jurisdiction. Plaintiff

 argues her claim should not be barred because Plaintiff became mentally incompetent

 after the alleged April 20, 2007 incident, thus qualifying her claim to the tolling of

 the N.C. Gen. Stat. § 97-24’s two-year limitation period. Plaintiff’s arguments will

 each be addressed in turn.
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 A. Standard of Review

¶ 14 The primary issue presented to this Court is whether Plaintiff timely filed her

 claim, and thereby, invoked the jurisdiction of the Commission over her April 20,

 2007 alleged injury. Our Court has established that “the timely filing of a claim for

 compensation is a condition precedent to the right to receive compensation and failure

 to file timely is a jurisdictional bar for the Industrial Commission.” Reinhardt v.

 Women’s Pavilion, Inc., 102 N.C. App. 83, 86, 401 S.E.2d 138, 140 (1991). “Whether

 a party timely filed a claim with the Commission is a question of jurisdiction . . . .”

 Cunningham v. Goodyear Tire & Rubber Co., 273 N.C. App. 497, 503, 849 S.E.2d 880,

 885 (2020). As this Court explained in Capps v. Southeastern Cable, the finding of a

 jurisdictional fact by the Commission “is not conclusive upon appeal even though

 there be evidence in the record to support such finding. The reviewing court has the

 right, and the duty, to make its own independent findings of such jurisdictional facts

 from its consideration of all the evidence in the record.” 214 N.C. App. 225, 226-27,

 715 S.E.2d 227, 229, (2011) (citation omitted). As such, this Court is tasked to review

 the entire record de novo. Morales-Rodriguez v. Carolina Quality Exteriors, Inc., 205

 N.C. App. 712, 715, 698 S.E.2d 91, 94 (2010).

¶ 15 “This Court makes determinations concerning jurisdictional facts based on the

 greater weight of the evidence” by assessing the credibility of the witnesses and the

 weight to be given their testimony and by weighing the evidence “using the same
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 tests as would be employed by any fact-finder in a judicial or quasi-judicial

 proceeding.” Cunningham, 273 N.C. App. at 503-04, 849 S.E.2d at 885 (first quoting

 Capps, 214 N.C. App. at 227, 715 S.E.2d at 229; and then quoting Morales-Rodriguez,

 205 N.C. App. at 715, 698 S.E.2d at 94).

 B. The Commission’s Jurisdiction over Plaintiff’s claim.

¶ 16 Pursuant to N.C. Gen. Stat. § 97-24(a), a claim is:

 forever barred unless (i) a claim or memorandum of
 agreement as provided in G.S. 97-82 is filed with the
 Commission or the employee is paid compensation as
 provided under this Article within two years after the
 accident or (ii) a claim or memorandum of agreement as
 provided in G.S. 97-82 is filed with the Commission within
 two years after the last payment of medical compensation
 when no other compensation has been paid and when the
 employer’s liability has not otherwise been established
 under this Article. The provisions of this subsection shall
 not limit the time otherwise allowed for the filing of a claim
 for compensation for occupational disease in G.S. 97-58,
 but in no event shall the time for filing a claim for
 compensation for occupational disease be less than the
 times provided herein for filing a claim for an injury by
 accident.

 N.C. Gen. Stat. § 97-24(a) (2021). This requirement of “filing a claim within two years

 of the accident is not a statute of limitation, but a condition precedent to the right to

 compensation.” Reinhardt, 102 N.C. App. at 84, 401 S.E.2d at 139 (citation omitted).

 The Commission’s dismissal of a claim “is proper where there is an absence of

 evidence that the Industrial Commission acquired jurisdiction by the timely filing of
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 a claim or by the submission of a voluntary settlement agreement to the

 Commission.” Id. at 86-87, 401 S.E.2d at 140-41.

¶ 17 Plaintiff acknowledges that she did not file her worker’s compensation claim

 with the Commission within the two years after her alleged April 20, 2007 injury,

 and in fact, filed her claim in 2018, more than eleven years after the injury. The

 Record further reflects that based on the testimony of Defendant’s claims adjuster,

 the Defendant-Carrier never paid indemnity or medical compensation to the Plaintiff

 in relation to her claim. Additionally, no evidence in the Record reflects Plaintiff and

 Defendant-Employer ever submitting a voluntary settlement agreement in

 connection to Plaintiff’s claim. Applying N.C. Gen. Stat. § 97-24(a) to the facts of this

 case, Plaintiff did not meet this condition precedent of a timely filing of her claim for

 the jurisdiction of the Commission to be invoked. Therefore, if Plaintiff’s claim does

 not qualify for tolling of N.C. Gen. Stat. § 97-24’s two-year limitation period, the

 dismissal of her claim is proper and the right to compensation is barred. Id.

 C. Mental Incompetency of Plaintiff Affecting Commission’s Jurisdiction

¶ 18 Despite her untimely filing to the Commission, Plaintiff contends that her

 claim is not time barred under N.C. Gen. Stat. § 97-24(a) because she was mentally

 incompetent within the meaning of N.C. Gen. Stat. § 97-50. In spite of N.C. Gen.

 Stat. § 97-24(a)’s two year time limitation, N.C. Gen. Stat. § 97-50 makes clear that

 there is no time limitation “provided in this Article for the giving of notice or making
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 claim under this Article [that] shall run against any person who is mentally

 incompetent.” N.C. Gen. Stat. § 97-50 (2021); Hand v. Fieldcrest Mills, Inc., 85 N.C.

 App. 372, 377-78, 355 S.E.2d 141, 145 (1987).

¶ 19 To qualify for the tolling protections of N.C. Gen. Stat. § 97-50, a mentally

 incompetent adult is one “who lacks sufficient capacity to manage the adult’s own

 affairs or to make or communicate important decisions concerning the adult’s person,

 family, or property whether the lack of capacity is due to mental illness, intellectual

 disability, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or

 similar cause or condition.” N.C. Gen. Stat. § 35A-1101(7) (2021); In re Z.V.A., 373

 N.C. 207, 210, 835 S.E.2d 425, 428 (2019). As such, the determination of

 incompetency is an adjudication process as Chapter 35A lays out that its provisions

 establish “the exclusive procedure for adjudicating a person to be an incompetent

 adult.” N.C. Gen. Stat. § 35A-1102 (2021); In re Dippel, 249 N.C. App. 610, 612, 791

 S.E.2d 684, 686 (2016).

¶ 20 Prior to the Full Commission’s hearing, the Plaintiff has never undergone the

 mandatory procedure to be adjudged incompetent under the provisions of N.C. Gen.

 Stat. § 35A-1101. However, we note that the Commission possesses the authority to

 determine whether Plaintiff was mentally incompetent during the two-year time

 limitation laid out in N.C. Gen. Stat. § 97-24(a). See Hand, 85 N.C. App. at 378-79,

 355 S.E.2d at 145.
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

¶ 21 In deciding whether someone is incompetent as defined by N.C. Gen. Stat. §

 35A-1101, “[t]he appropriate test for establishing an adult incompetent ‘is one of

 mental competence to manage one’s own affairs.’ ” Soderlund v. Kuch, 143 N.C. App.

 361, 373, 546 S.E.2d 632, 640 (2001) (quoting Cox v. Jefferson-Pilot Fire and Casualty

 Co., 80 N.C. App. 122, 125, 341 S.E.2d 608, 610 (1986)). In explaining the term

 “affairs,” our Supreme Court elaborated that it encompasses “a person's entire

 property and business — not just one transaction or one piece of property to which he

 may have a unique attachment.” Hagins v. Redevelopment Comm., 275 N.C. 90, 104,

 165 S.E.2d 490, 499 (1969). In the adjudication of competency, “[t]he facts in every

 case will be different and competency or incompetency will depend upon the

 individual's ‘general frame and habit of mind.’ ” Id. at 105, 165 S.E.2d at 500 (citation

 omitted). However, “mere weakness of mind will not be sufficient to put a person

 among those who are incompetent to manage their own affairs.” Id. (citation

 omitted).

¶ 22 Here, the Full Commission concluded that Plaintiff’s claim was jurisdictionally

 barred because Plaintiff did not file a claim within two years of April 20, 2007 and

 Plaintiff was not mentally incompetent during the relevant time, which would have

 qualified her for a tolling of N.C. Gen. Stat. § 97-24(a)’s two-year timeframe. Plaintiff

 challenges findings of fact 27 and 29 as well as conclusion of law 6 concluding Plaintiff

 was not mentally incompetent and therefore, not entitled to the tolling of N.C. Gen.
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 Stat. § 97-50. Plaintiff contends that because she (1) experienced symptoms and her

 diagnosis of schizophrenia was the subject of several involuntary commitment

 proceedings, and (2) was awarded full Social Security Disability benefits, the

 Commission erred when it concluded she had not established mental incompetency

 within the required time period to qualify for the tolling exemption.

 1. Finding of Fact 27

¶ 23 Plaintiff challenges the Commission’s finding of fact 27 that states:

 27. Based upon a preponderance of the evidence, the Full
 Commission finds that Plaintiff has not shown sufficient
 evidence to establish that she was mentally incompetent
 during the two-year limitations period following her
 alleged 20 April 2007 workplace injury. Although Plaintiff
 was involuntarily committed on 5 April 2009 and again on
 16 April 2009, the Full Commission finds that these
 incidents are insufficient, on their own, to show that
 Plaintiff was incapable of managing her own affairs
 between 20 April 2007 and 20 April 2009, as involuntary
 commitment and incompetency proceedings are statutorily
 distinct and involve different legal standards. The record
 contains no evidence that Plaintiff has ever been declared
 incompetent by the General Court of Justice. To the
 contrary, the records Plaintiff submitted to the
 Commission indicate that she was undergoing treatment,
 was taking her medication, and was generally considered
 to be in stable psychological condition for several years
 following her 2009 hospitalizations, and indeed was not
 hospitalized again until 21 October 2012, over three and a
 half years after her previous involuntary commitment.
 Moreover, Plaintiff remained legally capable of signing
 medical records releases and attorney-client agreements as
 late as 11 August 2014, over five years after her first
 involuntary commitment.
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

¶ 24 As we have previously noted, the Record reflects that Plaintiff has never been

 adjudicated as mentally incompetent or that there have been incompetency

 proceedings instituted against her. In preparation for her hearing before the Full

 Commission, Plaintiff submitted 1,289 pages of documents featuring medical records

 dating back to 2001. A close review of the Record indicates that in the two years

 spanning April 20, 2007 to April 20, 2009, Plaintiff possessed the frame of mind to

 manage her own affairs and to make or communicate important decisions regarding

 her person, family, or property. See id. at 105-06, 165 S.E.2d at 500. Plaintiff

 acknowledged that even after the alleged April 20, 2007 injury, she continued

 working for Defendant-Employer for the next nine months to one year. During her

 employment, Plaintiff drove herself to and from work, prepared meals, took care of

 her children, and paid her bills.

¶ 25 Continuing our review of the Record, we note the absence of any medical

 documentation tending to show that Plaintiff suffered from a psychiatric illness

 between April 20, 2007 and March 17, 2009. Instead, the Record demonstrates that

 Plaintiff underwent treatment for a hypertensive episode following the birth of a child

 on April 15, 2007 and on May 28, 2007 for tingling in the teeth and gums

 intermittently. Later, on June 29, 2007, the Plaintiff underwent a tubal ligation

 surgery. At these medical appointments and procedures, the Plaintiff reported “no

 previous psychiatric history” and did not endorse any psychiatric symptoms.
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

¶ 26 The Record also reflects Plaintiff’s documented experience of having

 psychiatric issues on March 17, 2009, where Plaintiff reported auditory

 hallucinations to a physician. Plaintiff was assessed to have schizophrenia but was

 noted to possess an intellect within normal limits, and to not be a danger to herself

 or others. In April 2009, Plaintiff was hospitalized on two separate occasions at

 Coastal Plain Hospital, where she received a diagnosis of psychosis. The Record

 demonstrates that even during Plaintiff’s involuntary hospitalizations, she actively

 participated in her treatment while hospitalized. During Plaintiff’s April 16-29, 2009

 hospitalization, Plaintiff expressed concerns of excessive sedation from her

 medications, at which point Plaintiff agreed to taking another medication to address

 this issue. At her April 30, 2009 discharge, Plaintiff’s medical document stated,

 Plaintiff “was felt to be stable medically and psychiatrically at the time of discharge

 with the patient exhibiting no behavior consistent with wish to harm herself or

 others.” While it is notable that Plaintiff experienced exacerbations of her psychiatric

 condition during these periods, Plaintiff still was able to manage her own affairs and

 make important decisions regarding her person and her affairs during her inpatient

 admissions. The Record tends to show that by November 11, 2009, Plaintiff’s

 psychiatric state had improved considerably. As noted previously, Plaintiff’s

 psychiatrist, Dr. Mann, found Plaintiff to be stable and capable of returning to work.

¶ 27 The Record shows that Plaintiff’s mental competency continued as she actively
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 underwent treatment, medication management, physician follow-up and remained in

 stable psychological condition for several years following her 2009 hospitalizations.

 Between 2009 and 2010, Plaintiff’s mental status exams remained consistent in

 reporting normal speech, unremarkable thought content, denying any hallucinations,

 and attending individual and group therapy. Plaintiff was not hospitalized again for

 her psychosis until October 21, 2012, over three and a half years after her previous

 involuntary commitment.

¶ 28 Additionally, Plaintiff executed medical release forms on September 21, 2010,

 November 27, 2011, April 1, 2013, June 30, 2014, and August 11, 2014 which

 permitted SSA to request medical records on her behalf. On June 30, 2014, Plaintiff

 also entered into an agreement with an attorney to represent her in the Social

 Security Disability claim. As a result, the undisputed Record evidence tends to show

 that Plaintiff remained legally capable of managing her own affairs when entering

 into these agreements.

¶ 29 Plaintiff contends that this Court should consider the incompetency

 proceedings she underwent between 2009 to 2015 in determining that she was

 mentally incompetent during the two-year period after the alleged April 20, 2007

 workplace injury. We disagree. Involuntary commitment proceedings and the

 determination of mental incompetency are two different proceedings and require

 separate legal standards. Involuntary commitment proceedings determine whether
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 an individual is a danger to themselves or others, or requires treatment in order to

 prevent a further disability or deterioration that would result in dangerousness. N.C.

 Gen. Stat. § 122C-261(a) (2021); In re Webber, 201 N.C. App. 212, 217, 689 S.E.2d

 468, 473 (2009); Gregory v. Kilbride, 150 N.C. App. 601, 612, 565 S.E.2d 685, 693

 (2002).

¶ 30 In contrast, an incompetency proceeding determines whether an adult has the

 capacity to manage their own affairs or make or communicate important decisions

 regarding their person, family, or property. See N.C. Gen. Stat. § 35A-1101(7); In re

 Dippel, 249 N.C. App. at 612, 791 S.E.2d at 686; Leonard v. England, 115 N.C. App.

 103, 107-08, 445 S.E.2d 50, 52 (1994). Our General Assembly defines the distinction

 between the two proceedings as,

 [t]he admission or commitment to a facility of an individual
 who allegedly has a mental illness. . . or an individual who
 allegedly has an intellectual or other developmental
 disability under the provisions of this Article shall in no
 way affect incompetency proceedings as set forth in
 Chapter 35A . . . of the General Statutes and incompetency
 proceedings under those Chapters shall have no effect upon
 admission or commitment proceedings under this Article.

 N.C. Gen. Stat. § 122C-203 (2021). Therefore, we conclude that the initiation of

 involuntary commitment proceedings against Plaintiff in 2009, 2012, and 2015 is not

 determinative of her mental competence in her 2007 workers compensation claim.

 2. Finding of Fact 29
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

¶ 31 Next, Plaintiff challenges the Full Commission’s finding of fact that the SSA’s

 decisions related to Plaintiff do not establish Plaintiff as being mentally incompetent

 during the period of time between the time of the alleged workplace injury and when

 she filed the workers compensation claim at issue here. The Commission’s finding of

 fact 29 states:

 Based on a preponderance of the evidence, the Full
 Commission finds that neither the 2017 SSA Fully
 Favorable Decision that Plaintiff was disabled as of 1
 September 2010 nor the 2015 appointment of a
 representative payee for Plaintiff’s SSA disability benefits
 establish that Plaintiff was mentally incompetent under
 North Carolina state law at any point during the relevant
 period.

 Plaintiff argues that the Commission erred by not placing a greater weight on the

 evidence contained in SSA’s documentation pertaining to its 2017 Fully Favorable

 Decision. Plaintiff contends that SSA’s decision was based on her “longitudinal

 medical history” and her records since 2008, and that these records should serve as

 “decisive evidence in this proceeding.” Again, we disagree. The Industrial

 Commission has the duty to “consider all of the competent evidence, make definitive

 findings, draw its conclusions of law from these findings, and enter the appropriate

 award.” Harrell v. J.P. Stevens & Co., 45 N.C. App. 197, 205, 262 S.E.2d 830, 835

 (1980).

¶ 32 The Record tends to show that the Commission considered and weighed the
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 fully favorable decision of SSA awarding Plaintiff Social Security Disability benefits

 as well as the 1,289 pages of medical documentation from Plaintiff’s packet to SSA

 that were submitted to the Commission. The Record indicates that the Commission

 addressed in its findings of fact the decision of the administrative law judge from the

 Social Security Administration’s Office of Disability Adjudication and Review, noting

 that the Plaintiff successfully appealed the date of her disability so that she was

 granted disability benefits as of September 1, 2010. The administrative law judge

 found that Plaintiff had not engaged in substantial gainful activity after September

 1, 2010 because of her schizophrenia and that Plaintiff possessed “the residual

 functional capacity to perform a full range of work,” but that Plaintiff is unable to

 make a successful vocational transition to other jobs that she could perform.

¶ 33 Despite SSA’s fully favorable decision for the Plaintiff and its appointment of

 a representative payee for the Plaintiff, Defendant-Employer contends that the

 determination of mental incompetency pursuant to N.C. Gen. Stat. § 35A-1101

 considers different legal standards and principles than the ascertainment of Social

 Security Disability benefits pursuant to 42 U.S.C. § 416(i).

¶ 34 The Commission concluded that although Plaintiff was disabled as of

 September 1, 2010, SSA’s determination was based upon federal statutes and

 regulations, rather than North Carolina state law. In reliance on 42 U.S.C. § 416(i),

 the Commission explained that the determination of whether an individual is
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 “disabled” and entitled to the benefits of Social Security rests on whether the

 individual is capable of gainful employment. See 20 C.F.R. § 404.1572 (2021).

¶ 35 In evaluating the evidence in the Record, the Commission looked to the logic

 of this Court’s finding in Hand that while the ability to work may be part of the

 determination of mental incompetency under N.C. Gen. Stat. § 35A-1101, it is not

 dispositive and other factors may be considered. See Hand, 85 N.C. App. at 378-79,

 355 S.E.2d at 145 (holding that the record contained evidence which supported the

 Commission’s finding that Plaintiff was not incompetent and her untimely workers

 compensation claim was barred because, among other factors, Plaintiff continued in

 her job, which required physical and mental dexterity, understood her pay scale and

 contested the amount when she thought it was too low.).

¶ 36 Thus, we hold that the evidence of SSA’s Fully Favorable Decision of Plaintiff’s

 disability supports the Commission’s finding that Plaintiff was not mentally

 incompetent under North Carolina law during the time in question.

¶ 37 Next, Plaintiff contends the Commission erred in not placing greater weight

 on SSA’s assignment of a representative payee for Plaintiff on May 7, 2015, in relation

 to Plaintiff’s claim for Social Security Disability benefits. The Record does not,

 however, contain any evidence tending to show that the Commission is bound by

 SSA’s determination, nor that SSA’s assignment is dispositive evidence of Plaintiff

 being mentally incompetent under North Carolina Law. (citing Program Operations
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 Manual System (POMS) GN 00501.010(B)(8), SOC. SEC. ADMIN.,

 https://secure.ssa.gov/apps10/poms.nsf/lnx/0200501010 (last visited Apr. 10, 2022)).

 The Commission found that SSA’s regulations and rules articulate that a

 determination of incapability “is a DECISION BY SSA that a claimant is unable to

 manage or direct the management of benefits in his/her best interests” and that “an

 incapability decision is valid only for SSA matters.” Id.

¶ 38 SSA defines a “legally competent adult” as an individual who “has not been

 found to be legally incompetent by a court of law” and “may include an adult who SSA

 has determined is incapable of managing or directing the management of funds.” Id.

 Although SSA determined Plaintiff is unable to manage her benefits and requires a

 representative payee, under SSA’s regulations and in the absence of an adjudication

 of incompetence, Plaintiff qualifies as a legally competent adult. See 42 U.S.C. §

 405(j)(1)(A) (2021); N.C. Gen. Stat. § 35A-1102.

¶ 39 Based on the greater weight of the evidence, we conclude that SSA’s 2017 fully

 favorable decision for Social Security Disability benefits and the 2015 Representative

 Payee Appointment does not establish that Plaintiff was mentally incompetent under

 North Carolina state law.

 3. Conclusion of Law 6

¶ 40 Finally, Plaintiff challenges the Commission’s conclusion of law that “[b]ased

 on the foregoing findings of fact, the Full Commission concludes that between 20 April
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

 2007 and 20 April 2009, Plaintiff was capable of managing her own affairs and as

 such, was not mentally incompetent.”

¶ 41 As previously discussed, the Commission’s function is “to weigh and evaluate

 the entire evidence and determine as best it can where the truth lies.” Harrell, 45

 N.C. App. at 205, 262 S.E.2d at 835 (citation omitted). In reaching its conclusion, the

 Commission relied on its findings discussed herein. The Commission weighed and

 evaluated the entire Record, including the 1,289 pages of documentation featuring

 Plaintiff’s medical records, the decisions made by SSA in awarding Plaintiff Social

 Security Disability benefits, and Plaintiff’s involuntary commitment proceedings and

 hospitalizations. For these reasons, we hold that the greater weight of the evidence

 demonstrates that Plaintiff was not mentally incompetent during the two-year period

 after her alleged work injury.

 IV. Conclusion

¶ 42 After a careful examination of the Record before us, we conclude because

 Plaintiff failed to file a timely claim and does not qualify for tolling of N.C. Gen. Stat.

 § 97-24’s two-year limitation period, Plaintiff’s claim was time-barred and the

 Commission did not err when it dismissed her claim for lack of subject matter

 jurisdiction. Reinhardt, 102 N.C. App. at 86-87, 401 S.E.2d at 140-41. The opinion

 and award of the Full Commission in this matter is affirmed.
 MOYE-LYONS V. N.C. DEPT. OF PUB. INSTRUCTION

 2022-NCCOA-260

 Opinion of the Court

AFFIRMED.

Chief Judge STROUD and Judge ARROWOOD concur.